(Surrogate's Court, New York County. December, 1895.)

WILLS—UNDUE INFLUENCE.
    Probate will be refused on the ground of undue influence, it appearing that testatrix had barely reached the age when a minor can make a will, had for a long time been an invalid, was weak in mind, and died 10 weeks after making the will; that it gave everything to her aunt by marriage, who was her guardian, with whom she lived though she had a brother; that though the will recited, as reason for giving the brother nothing, that he had been cruel to her, he and testatrix were playing together immediately after the paper was executed, and witnesses testified that never in many years had they seen any evidence of an unfriendly spirit between them; that, though the reason stated in the will for giving the property to the aunt was that the aunt had given her a good home and kind treatment, she had been amply paid for all she had done, out of the ward's estate; and that when, on petition of the ward stating it was necessary for her health that she go to a warmer climate and

have carriage rides, $500 was advanced to the guardian out of the ward's estate, with a provision in the order that it should be expended for the purposes stated, "and not otherwise,", the guardian spent $50 of it for having the ward's will drawn, $150 for a ring for the ward, and deposited the balance to her own credit in a savings bank.

Petition for probate of the will of Jennie Carland, deceased. Denied.

O'Shaughnessy & Kelly, for proponent.

Henry F. Miller, for contestant.

FITZGERALD, S.    Jennie Carland, the decedent, was an orphan. She had barely reached the age when a minor can make a legal bequest of personal property.    By the instrument propounded, she gives her whole estate to Mrs. Platt, her aunt by marriage, and the guardian of her person, and with whom she was living.    The claims of her brother, her only next of kin, were not only ignored, but in the paper is contained the unusual statement that, in making the will, she had taken into consideration her brother, George, and her aunt, Mrs. Nettie Watts, and, as they were entitled to nothing from her because of their cruel and unkind treatment of her, she had made the devise and bequest to Mrs. Platt, because Mrs. Platt had given her a good home, kind treatment, motherly care, and nursing during her long and protracted illness.    The language quoted is, doubtless, that of the scrivener, in which the decedent probably acquiesced, but such a statement is not competent evidence of the fact. It is only admissible as showing her feelings towards the persons named.    Mrs. Watts was produced as a witness for the contestant, and she denied that she had been guilty of cruel or unkind treatment of the deceased.    The brother was not called.    He would have been competent to either affirm, deny, or explain the statement of his alleged cruel and unkind treatment.    But it was shown that, immediately after the execution of the paper, he and his sister were engaged in conversation, and were playing cards together.    Other witnesses testified that in many years they had never seen any evidence of an unfriendly spirit between the brother and sister.    It is certain that she was and had been for some time an invalid, and about 10 weeks after the execution of the paper she died.    One witness, in describing her, states that he had a "pity for the poor little girl."    Another, Mr. Heyman, a subscribing witness, testified that "she was quiet and passive."    Still another, Mr. Cohn, the draftsman of the will, states that she looked like a girl of 14 or 15, not matured; that she was thin, wasted, pale, and languid, with no life or vigor about her, for she was perfectly passive.    Mr. Cohn's testimony is open to criticism because, with this view expressed of the girl's weak condition, he, an intelligent attorney, received the instructions for the preparation of the instrument in which the guardian was made the sole beneficiary, superintended its execution, and became a subscribing witness thereto.    But many of the facts testified to by him are corroborated by the testimony of other witnesses; and, by the circumstances showing the origin and execu-

tion of the paper, I cannot but conclude that the girl was in a weak mental and physical condition, and could be easily influenced by a dominating mind, and, on all the evidence, I am satisfied that Mrs. Platt was the active directing mind in causing the preparation and execution of the paper. She certainly had both motive and opportunity for diverting to herself the estate of her ward. She did not even wait for the death of her niece to begin to vest it in herself. A petition was filed by the ward setting forth that it was necessary for her health that she go to a warmer climate, that she have carriage rides, and a belief that the guardian would spend the money judiciously for the benefit of her health. On these representations, an order was entered that $500 be advanced to the guardian out of the estate. But the order was coupled with a condition that the guardian was to expend the same, or as much as would be therefor required, for the purposes stated in the petition, "and not otherwise." The good faith of Mrs. Platt may well be questioned when it appears that out of the sum $50 was paid to the attorney for drawing the will, and $150 in the purchase of a ring for the ward, and that the balance was deposited by the guardian to her own credit in a savings bank, though this fact was reluctantly admitted. This was a clear violation, not only of the spirit, but of the letter, of the direction of this court. When, under a will, the natural objects of a testator's bounty are ignored, and a stranger who is the sole beneficiary presents the paper for probate, he should come into court prepared to show that it represents the free and unconstrained wishes of the testator, and that there were good reasons moving for the disinheritance of kindred, for such a paper "is viewed with great suspicion by the law, and some proof should be required besides the factum of the will before it can be sustained." Marx v. McGlynn, 88 N. Y. 370. "When the guardian has been at all instrumental in procuring the execution of the will, the law presumes undue influence by reason of the confidential relation existing between the guardian and ward. And the guardian who proposes such acts must go beyond the mere formal execution of the paper, and show the act to have been the act of a voluntary, capable, and understanding testator." Limburger v. Rauch, 2 Abb. Prac. (N. S.) 279. The contest of the will of Fanny Bosch, reported under the title of Seiter v. Straub, 1 Dem. Sur. 264, has many features similar to the one now under consideration. In that proceeding, Surrogate Rollins made an able presentation of the law applicable to such cases, and it may be referred to with profit. Probate was denied, and the matter was never appealed. It is often difficult to determine the existence of undue influence when it is not made manifest by threats or physical coercion. But in Children's Aid Soc. v. Loveridge, 70 N. Y. 387, Judge Miller presents a lucid definition. He says that, to avoid a will on the ground of undue influence, "it must be shown that the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his free will and desire,

but which he was unable to refuse or too weak to resist. It must not be the promptings of affection, the desire of gratifying the wishes of another, the ties of attachment arising from consanguinity, or the memory of kind acts and friendly offices, but a coercion produced by importunity or by a silent resistless power, which the strong will often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear." In this case, Mrs. Platt, the guardian, had doubtless been kind to her ward; yet, for all she did do, she has been amply paid out of the ward's estate. Not satisfied with this, she anticipated a portion of the testamentary benefaction by taking possession of $450 which this court had ordered to be advanced for specific uses for the benefit of her ward, and diverted it to other uses. On all the proofs, I am satisfied that the will was the result of undue influence "exerted by a strong will over a sick young girl." In this view I will sign a decree denying probate.

Probate denied.